UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 1 of 12 |

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS [44]**

On January 5, 2021, Plaintiff Patricia Klawonn, on behalf of the Motion Picture Industry ("MPI") Individual Account Plan (the "IAP" or "Plan"), filed her First Amended Complaint ("FAC") asserting one claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against the Board of Directors for the Motion Picture Industry Pension Plans ("Board") and John and Jane Does 1-20. [Doc. # 41.]

On February 12, 2021, the Board filed a Motion to Dismiss ("MTD") the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. # 44.] The Board also filed a Request for Judicial Notice ("RJN"). [Doc. # 45.] The MTD and RJN are fully briefed. [Doc. ## 46-49.] The Board also filed a notice of supplemental authority. [Doc. # 50.]

For the reasons set forth below, the Court **GRANTS** Defendants' MTD.

**I.
JUDICIAL NOTICE**

Federal Rule of Evidence 201 permits a court to judicially notice facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In addition, under the doctrine of incorporation by reference, a court may take into account documents that are central to the plaintiff's claim or whose contents are alleged in a complaint, if no party questions the documents' authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The Board seeks judicial notice of 10 documents attached to the Declaration of Nancy Ross accompanying the MTD, which fall into three categories: (1) IAP governance documents central to Klawonn's claim, (2) documents incorporated by reference in the FAC, and (3) publicly available government materials. [Doc. # 45.] Klawonn does not contest that the Court may consider the IAP governance documents. RJN Opp. at 2 [Doc. # 47.] The Court thus **GRANTS**

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
| Title | *Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 2 of 12 |

the RJN as to the Summary Plan Description, MPI IAP and Trust Agreement, MPI Pension Plan and Trust Agreement, and IAP Form 5500 for the period ending December 31, 2018. *See* Ross Decl., Ex. A, B, C, D [Doc. ## 44-2 through 44-5].

Klawonn argues that the remaining documents are either not incorporated by reference or not noticeable, or that the Plan's attempted usage of those documents exceeds the permitted scope of judicial notice. RJN Opp. at 2-10. But the 2019 MPI IAP Performance Report from Advanced Research Investment Solutions ("Performance Report") is properly subject to judicial notice because the FAC refers to it as a "participant communication" and relies on it to assert the Board's knowledge of the Plan's deficiencies. *See* FAC ¶ 52; Ross Decl., Ex. E (Performance Report) [Doc. # 44-6]. In addition, because the United States Department of Labor ("DOL") Private Pension Plan Bulletin ("DOL Bulletin") is a publicly available government document, the Court may take judicial notice of it for uncontested facts regarding how many ERISA plans reported themselves as defined contribution plans with no participant investment options. Ross Decl., Ex. G (DOL Bulletin) [Doc. # 44-8]. Accordingly, the Court **GRANTS** the RJN as to the Performance Report (Exhibit E) and the DOL Bulletin (Exhibit G).

The FAC does not rely, however, on the Investment Policy Statement, and the Court does not take judicial notice of it. *See* Ross Decl., Ex. I [Doc. # 44-10]. The Court also does not rely on the remaining government documents of which the Plan seeks notice. *See id.*, Ex. H, J, K [Doc. ## 44-9, 44-11, 44-12]. The Court therefore **DENIES** the RJN as to those documents.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND[1]

The ERISA plan at issue here is the MPI Individual Account Plan (the "IAP" or "Plan"), originally established in 1979 and established as restated on January 1, 1993. FAC ¶ 16. Defendant the Board manages the IAP, as well as another retirement plan on behalf of eligible employees of the motion picture industry employers in the Los Angeles area who are either subject to a collective bargaining agreement or who have contracted directly with the Plan. *Id.* at ¶¶ 16, 18, 22. The members of the Board, also known as Directors, are employees of participating employers and representatives of participating unions. *Id.* at ¶ 24. Because the members of the Board are unknown to Klawonn, they are named in the FAC as John and Jane Does 1-10. *Id.*

---

[1] The Court assumes the truth of the FAC's factual allegations solely for the purpose of deciding the Board's MTD.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 3 of 12 |

The Plan is an ERISA "employee pension benefit plan" within the meaning of 29 U.S.C. section 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. section 1002(34). *Id.* at ¶ 17. From the end of 2014 until the end of 2019, the Plan had between 79,000 and 92,000 participants, and between $3.7 billion and $5.1 billion in assets. *Id.* at ¶ 19. Participants' accounts are funded by employer contributions, which are allocated to participants on an annual basis. Employees are not permitted to contribute their own money to the Plan. *Id.* at ¶ 20. The Plan includes one overarching investment in which participants are automatically enrolled. Within that investment, the Board invests in numerous underlying investment accounts, and the combined returns net of fees for these underlying investment accounts equal the Plan's investment performance. Participants have no choice over how their money is invested, including the allocation of assets among the underlying investments. *Id.* at ¶ 21. The 2019 MPI IAP Performance Report describes the Plan's investment strategy this way:

> The overall portfolio strategy is to protect capital while trying to earn 7.5% net returns. This balancing of risk and return can be efficiently accomplished by diversifying the portfolio across various asset classes that respond differently to different economic environments. In addition, active managers that have exhibited low correlation to traditional markets may be used as additional diversifiers. In both cases, strong balance will be required to minimize the risk of material losses, which is of utmost importance.

Ross Decl., Ex. E (Performance Report) at 4 [Doc. # 44-6].

Klawonn is a resident of Los Angeles, California and has been a participant in the Plan since at least 1992. She has had a vested interest in her accrued retirement benefits since 1994. FAC ¶ 15. She alleges that the Board did not appropriately consider the needs of Plan participants by using a "one-size-fits all investment portfolio" that is "laden with excessively costly underlying investments that performed poorly." *Id.* at ¶¶ 43-45. According to the FAC, the Board allocated up to 45% of Plan assets into mutual and hedge funds that carried significant investment management fees, even though since at least 2014, a significant number of investments have been pulling their money out of hedge funds due to their high fees and mediocre performance. *Id.* at ¶¶ 46-48. By the end of 2019, the Plan was one of the most expensive plans in the country when compared to approximately 950 other defined contribution plans with assets over $1 billion covered by ERISA, with total fees amounting to 1.18% of Plan assets. *Id.* at ¶ 49 (citing Investment Company Institute, A Close Look at 401(k) Plans (2020), at 57,[2] available at https://www.ici.org/pdf/20_ppr_dcplan_profile_401k). From 2013 to 2018, the Plan's returns

---

[2] All page references herein are to page numbers inserted by the CM/ECF system.

Case 2:20-cv-09194-DMG-JEM   Document 53   Filed 08/09/21   Page 4 of 12   Page ID #:2048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 4 of 12 |

consistently landed it among the bottom 5% of 1,651 defined contribution plans with more than $100 million in assets on a 3-year basis, and the bottom 2% of 175 plans with over $1 billion in assets on a 5-year basis and 10-year basis in 2018. *Id.* at ¶¶ 50-51 (citing to data filed with the DOL available at https://www.efast.dol.gov/portal/app/disseminatePublic?execution=e1s1).

In addition, the FAC alleges that the Board was aware that the Plan was performing poorly. In its 2019 Fourth Quarter Performance Report, the Plan's performance was compared against three benchmarks: (1) MSCI, Inc.'s World Index ("MSCI World Index"); (2) a more traditional investment portfolio called the "60/40 Portfolio," which is comprised of 60% stocks (as measured by the MSCI World Index) and 40% bonds (as measured by the Merrill Lynch Domestic Master Index); and (3) an in-house composite index.[3] *Id.* at ¶ 52; *see also* Performance Report at 27. Although the Plan tracked these benchmarks on a 20-year basis, the Plan's performance over the last 10 years trailed those chosen benchmarks significantly. *Id.* at ¶¶ 52-53. The Plan's short-term performance of 11.1% in 2019 also ranked it in the 92nd percentile of peer plans. *Id.* at ¶ 53.

In light of the Plan's high fees and alleged underperformance, Klawonn asserts on behalf of the Plan that the Board has breached its fiduciary duty of prudence in managing the Plan investments under ERISA, 29 U.S.C. §§ 1002(21), 1102(a)(1). *Id.* at ¶¶ 57, 59-60, 74-78. She seeks certification of a class action consisting of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the Motion Picture Industry Individual Account Plan at any time on or after July 24, 2014, excluding Defendants, or any other persons with responsibility for the Plan's investment or administrative functions.

*Id.* at ¶ 63. On behalf of the Plan, she seeks a declaration of the Board and Doe Defendant Board Members' liability under ERISA, an order compelling the Board and Board Members to "personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties escribed above," other equitable relief as appropriate, and attorneys' fees and costs. *Id.* at 29.

---

[3] The FAC cites to the MSCI website for a description of the MSCI World Index, which is a "broad global equity index that represents large and mid-cap equity performance across all 23 developed markets countries" that "covers approximately 85% of the free float-adjusted market capitalization in each country." MSCI, "MSCI Developed Markets Indexes," *available at* https://www.msci.com/developed-markets (last visited July 28, 2021); *see* FAC ¶ 52 n.20. The FAC also describes reasons not to rely on the Plan's internal composite index as a comparator. FAC ¶ 52 n.21. Because the Court will not rely on that internal index, no further description of that index is necessary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-9194 DMG (JEMx) | Date | August 9, 2021 |
|---|---|---|---|
| Title | Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al. | Page | 5 of 12 |

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1) a defendant may raise either a facial or a factual challenge to a federal court's jurisdiction on the ground of lack of subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) states that a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678. Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)); *see* Fed. R. Civ. P. 15(a)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | ***Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 6 of 12 |

## IV.
## DISCUSSION

### A.  Standing

The Board argues that Klawonn lacks standing to sue because she has not yet triggered benefits and cannot allege an injury-in-fact under Article III. MTD at 15. But an ERISA defined-contribution plan participant need not have triggered benefits in order to suffer injury from an alleged breach of fiduciary duty. ERISA provides that a suit for breach of fiduciary duty may be brought by a "participant," defined as, *inter alia*, "any employee . . . who is or *may become* eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1132(a)(2) (emphasis added). A current participant may be injured through losing money spent on "higher fees for materially identical funds," which also results in lost investment opportunity for that money. *Tibble v. Edison Int'l* (*Tibble III*), 843 F.3d 1187, 1198 (9th Cir. 2016). A participant in a defined contribution plan may also be injured by loss measured as the "difference between the benefit he received and what he would have received if the Plans' assets had been prudently invested." *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1026–27 (9th Cir. 2009).

Klawonn's interest in her Plan benefits has vested, and she alleges that she has suffered the injuries of overly-high fees and also missed investment opportunities due to the Plan's imprudent investment decisions. *See* FAC ¶¶ 9, 49 (describing "astronomical" fees); ¶ 39 (effect of high fees on a participant's account balance); ¶¶ 50-57 (alleging underperformance causing loss of investment returns). She has adequately alleged an injury-in-fact to support her standing to sue. *See Vaughn*, 567 F.3d at 1026–27.

### B.  Timeliness

ERISA has two statutes of limitations: (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation; or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. 29 U.S.C. § 1113(a). The Board argues that Klawonn's suit is untimely because she challenges the prudence of the IAP's pooled-asset structure, which became effective in August 1, 1979. MTD at 17. But Klawonn argues that she challenges not the IAP's structure, but its investment decisions. Because fiduciaries have a "continuing duty to monitor [plan] investments and remove imprudent ones," the Supreme Court held that "so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." *Tibble v. Edison Int'l* (*Tibble II*), 575 U.S. 523, 530 (2015).

Case 2:20-cv-09194-DMG-JEM   Document 53   Filed 08/09/21   Page 7 of 12   Page ID #:2051

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | ***Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 7 of 12 |

To the extent Klawonn's claims are based on investment decisions that she alleges are imprudent in the six years prior to filing her lawsuit, they are timely.

Klawonn also asserts that she did not have actual knowledge of the basis for her investment monitoring claims until shortly before this suit was filed in 2020. FAC ¶ 58; *see Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776-79 (2020) (emphasizing that ERISA's actual knowledge requirement is distinct from constructive knowledge, or what the plan participant *should* have known). The Ninth Circuit has found the inquiry into a plaintiff's actual knowledge to be "entirely factual, requiring examination of the record." *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 552 (9th Cir. 1990). The Court therefore takes Klawonn's allegation of lack of knowledge as true at this stage. *See Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017). Her claims may proceed under either statute of limitations.

**C.      Breach of Fiduciary Duty**

In relevant part, ERISA provides that a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, to the extent that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. 29 U.S.C. § 1002(21)(A). ERISA requires plan fiduciaries to act "solely in the interest of [plan] participants . . . for the exclusive purpose of (i) providing benefits to participants . . . and (ii) defraying reasonable expenses of administering the plan[.]" *Id.* § 1104(a)(1). ERISA also requires plan fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." *Id.* § 1104(a)(1)(B).

To evaluate whether a plan fiduciary has breached his fiduciary duty of prudence, the Court focuses "not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996). "Because the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (internal quotation and citation omitted).

Klawonn argues that the following choices by the Board constitute breaches of fiduciary duty: (1) the use of a single asset management strategy for all IAP participants, without the opportunity for individual participants to manage their own investments; and (2) failure to reconsider investment in actively managed hedge funds, which have overly high fees and comparatively poor performance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | ***Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 8 of 12 |

**1. Duty of prudence claim based on the Plan's single asset management strategy**

Klawonn argues that the Board's choice of a single investment strategy for such a large, diverse group of participants was not reasonably prudent. FAC at ¶¶ 35, 43-45. Although she recognizes that inclusion of just one investment option in a defined contribution plan is not *per se* imprudent, she argues that a plan with 92,000 participants should have offered participants the ability to choose their own investment mix rather than a "one-size-fits-all" investment strategy.[4] *Id.* at ¶¶ 43-44.

The Board argues that this is merely an attack on the IAP's pooled-asset design, rather than its investment portfolio. MTD at 18. Critically, the Plan itself authorizes the Board, under its "General Powers," to "designate . . . one or more investment Managers as the Fiduciary with respect to the investment, control and management of Trust assets." MPI IAP and Trust Agreement at Art. X § 2(h) [Doc. # 44-4 at 112]. This Plan provision *requires* the Board to pool all assets under one or more investment managers, rather than to give participants control over their own investments. Because the employers who created the Plan included this provision, it is considered a decision "regarding the form or structure of the Plan," which is not subject to ERISA's fiduciary obligations. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (citation omitted) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."). Therefore, the Board does not have any discretionary authority to give Plan participants like Klawonn the opportunity to select their own investments. Because a fiduciary act was not involved in the Plan's design decision to have investment managers control all pooled assets, the Board cannot be liable for breach of fiduciary duty with respect to the single asset investment strategy. *See Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 1001 (N.D.

---

[4] Klawonn recognizes that ERISA permits the existence of a multiemployer, pooled-asset plan with no participant-directed investments. Multiemployer plans are permitted under ERISA so long as they are jointly administered by an equal number of union and management trustees, like the IAP is. *See* 29 U.S.C. § 1002(37) (defining "multiemployer plan"). In addition, although no provision of ERISA explicitly describes a plan in which participants cannot choose their own investments, ERISA section 404(c) provides a safe harbor from fiduciary liability to participants in plans that affirmatively allow the converse: where participants "exercise[] control over the assets in [their] account[s]." 29 U.S.C. § 1104(c)(1)(A). By designating a fiduciary safe harbor "[i]n the case of a pension plan" that gives individuals control, the statute suggests that there are other pension plans that do *not* give participants such control over their own assets. Otherwise, "the express exception would be rendered insignificant, if not wholly superfluous, contrary to "a cardinal principle of statutory construction." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Indeed, plans where participants cannot choose their investments are not uncommon—as of 2018, the most recent year with public data available from the DOL, there were approximately 93,000 defined contribution plans that did not permit their participants to direct any investments. DOL Bulletin at Table D5 [Doc. # 44-8 at 58]. Thirteen of those plans—presumably including the IAP at issue here—had over 50,000 participants. *Id.*

Case 2:20-cv-09194-DMG-JEM Document 53 Filed 08/09/21 Page 9 of 12 Page ID #:2053

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 9 of 12 |

Cal. 2018), *aff'd in relevant part*, 982 F.3d 1204 (9th Cir. 2020) (noting that a plan's decision to enter into an agreement with a specific benefits manager was a "plan design decision, exempt from fiduciary review") (citation omitted).

Thus, Klawonn's claim for breach of the fiduciary duty of prudence based solely on the Plan's lack of participant-controlled investment options must be **DISMISSED**. The Court also finds that amendment on this facet of her claim would be futile.

### 2. Duty of prudence claim based on the Board's choice of investment managers

The Plan terms do not necessarily foreclose Klawonn's claim that the Board acted imprudently by choosing investment managers that charge overly-high fees and have poor recent performance. The Board still owes fiduciary duties to participants under ERISA with respect to discretionary decisions on managing and administering the Plan. FAC ¶ 22. The MPI IAP and Trust Agreement states that the Directors "shall have the power and authority to administer this Plan" and "shall be the Fiduciary with respect to the control and management of the Plan except as otherwise provided herein." MPI IAP and Trust Agreement at Art. X §§ 1, 2. Although the Directors are no longer fiduciaries with respect to the individual investments selected by the designated investment managers, they remain "responsible to periodically review such investments for the purpose of determining whether such Fiduciary is satisfactorily performing authority within the scope of the delegation made by the Directors." *Id.* § 2(h).

This Plan term corresponds with the ERISA fiduciaries' "continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble II*, 575 U.S. at 529-30. A claim for breach of this facet of the duty of prudence has also been styled as a "failure to monitor" claim. *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 464 (N.D. Cal. 2017). With respect to high fees, the Ninth Circuit has held that under trust principles applicable to ERISA fiduciaries, "[w]asting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obliged to minimize costs." *Tibble III*, 843 F.3d at 1198 (quoting Unif. Prudent Investor Act § 7). But a plan's "failure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017); *see also Tibble v. Edison Int'l* (*Tibble I*), 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, *Tibble II* ("[T]here are simply too many relevant considerations for a fiduciary, for that type of bright-line approach to prudence to be tenable."). Instead, in addition to allegations of high fees, courts look for other indications that the plan fiduciaries' "decision-making process was flawed," such as the investments' underperformance and the fiduciaries' potential breaches of the duty of loyalty via self-dealing or improper influence. *Terraza*, 241 F. Supp. 3d at 1076; *see*

Case 2:20-cv-09194-DMG-JEM Document 53 Filed 08/09/21 Page 10 of 12 Page ID #:2054

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | *Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 10 of 12 |

also *Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021) (collecting cases); *Bouvy v. Analog Devices, Inc.*, No. 19-CV-881 DMS (BLM), 2020 WL 3448385, at *9 (S.D. Cal. June 24, 2020).

Although she does not allege any issues with the duty of loyalty, Klawonn alleges that the Board acted imprudently by continuing to allocate up to 45% of Plan assets into mutual funds and hedge funds that both charged too-high fees and underperformed. FAC ¶¶ 46, 50. The FAC clearly alleges that the IAP was one of the five most expensive plans in the country, compared to approximately 951 defined contribution ERISA plans with assets over $1 billion at the end of 2019. FAC ¶ 49. It estimates that total fees amounted to approximately 1.18% of Plan assets, which are between four and five times higher than the average for the other 950 plans.[5] *Id.* Moreover, the Plan underperformed one of its own benchmarks, the MSCI World Index, by more than 50% over the five-year period from 2015 to 2019. FAC ¶ 52; *see also* Performance Report at 14. The FAC also alleges that, compared to similarly sized plans, the Plan was one of the worst performing plans in the country throughout the Class Period, consistently ranking near the bottom or dead last among plans with $1 billion in assets or more. FAC ¶ 51. In light of the Plan performance data presented to the Board on a quarterly basis, the Board was presumably aware of the Plan's weak performance on a ten-, five-, and three-year basis. *See* Performance Report at 29.

But the FAC fails to provide any more details about the Plan's comparators, and it also fails to specify what "significantly better performing underlying investments with lower fees" the Board should have investigated. *See* FAC ¶ 56. Although the FAC cites to literature criticizing the performance of hedge funds, such general allegations about an entire category of investment managers or investments do not sufficiently demonstrate that the Board acted imprudently. *See White v. Chevron Corp.* (*White II*), No. 16-CV-0793-PJH, 2017 WL 2352137, at *9 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (finding similarly general allegations based on the literature about money market funds to be insufficient to state a claim of imprudence). By contrast, in *Terraza*, the plaintiff compared the plan's investments with specific other offerings to provide concrete examples of the plan's high expense ratios and underperformance. 241 F. Supp. 3d. at 1075-76. Similarly, in another case where a plaintiff challenged an ERISA plan's over-investment in high-fee under-performing hedge funds, the plaintiff identified specific comparators that produced higher returns. *See Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL

---

[5] Although the Board argues that Klawonn's calculation of this fee percentage is based on incomplete data, her methodology does not seem so speculative as to constitute a mere guess. *See* MTD at 34; *cf. Marks v. Trader Joe's Co.*, No. CV 19-10942-PA (JEMx), 2020 WL 2504333, at *6 (C.D. Cal. Apr. 24, 2020) (dismissing breach of fiduciary duty claim where the plaintiffs had "no factual basis" for their "guess" of the amount of fees). For the purpose of deciding this MTD, the Court takes this calculation as true.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 | |
|---|---|---|---|---|
| Title | ***Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 11 of 12 | |

229235, at *8 (N.D. Cal. Jan. 21, 2021). But even in *Anderson*, the court held that "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks." *Id.* In addition, it is not clear to what extent the Plan's underperformance in the past ten years is attributable only to the 45% of Plan assets in mutual funds and hedge funds, rather than to issues with the remaining 55% of assets.

Klawonn argues that she need not identify specific comparators because the FAC relies on the Board's "hand-picked benchmarks," *i.e.*, the MSCI World Index and the 60/40 Portfolio. Opp. at 21; *see* Performance Report at 27. No doubt, the Board's own recent Performance Report indicates that the three-, five-, and ten-year returns on the MSCI World Index and the 60/40 Portfolio are higher than the Plan's returns. Performance Report at 24. But the Plan's 20-year returns are comparable to the MSCI World Index and the 60/40 Portfolio, with less volatility. *Id.* at 27. The Board argues that this performance aligns with the Plan's specific structure and goal "to generate consistent absolute returns in *all market environments*." *Id.* at 23 (emphasis added). As the Performance Report states, the Plan's investment strategy is to "protect capital while trying to earn 7.5% net returns," and "minimiz[ing] the risk of material losses . . . is of utmost importance." *Id.* at 4.

The Plan's conservative approach is not necessarily imprudent, since "[a] fiduciary may reasonably select an investment alternative in view of its different risks and features, even if that investment option turns out to yield less than some other option." *White II*, 2017 WL 2352137, at *10. Although Klawonn argues that passively managed funds have lower fees and better performance than actively managed funds like hedge funds, this comparison does not necessarily support a claim for imprudence where the two types of funds "'have different aims, different risks, and different potential rewards.'" *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *4 (N.D. Cal. Feb. 9, 2021) (quoting *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *3 (N.D. Cal. Oct. 5, 2020)). In this case, if the Plan had invested in passively managed funds which by design "produce returns that are very close to the market segment tracked by the index," it would not have achieved its goal of generating stable absolute returns *irrespective* of market conditions. *See* FAC ¶ 34. Indeed, investing in passively managed funds could produce the opposite of its goal and subject Plan participants to more volatility.

Moreover, courts are careful to "'judge a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight.'" *Terraza*, 241 F. Supp. 3d at 1076 (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013)). While the general allegations of high fees and underperformance compared to other large pension funds are indicia of imprudence, Klawonn has not sufficiently alleged what other investment options were available and could satisfy the Plans' strategy. The Court thus cannot

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194 DMG (JEMx)** | Date | August 9, 2021 |
|---|---|---|---|
| Title | ***Patricia Klawonn, on behalf of the Motion Picture Industry Individual Account Plan v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 12 of 12 |

infer from the FAC and judicially noticeable documents that the Board's "decision-making process was flawed." *Id.* at 1077.

Accordingly, for lack of specific comparators, the SAC does not state a plausible claim for breach of the duty of prudence based on the failure to monitor the Plan's investment. Because this deficiency potentially can be addressed by amendment, the Court **DISMISSES** the claim with leave to amend as to imprudent monitoring.

## V.
## CONCLUSION

In light of the foregoing, the Court **GRANTS** the Board's MTD and **DISMISSES** Klawonn's claim for breach of fiduciary duty, with leave to amend only with respect to the failure to monitor the Plan's investments. The Court denies leave to amend the claim to the extent it is based on the Plan's single asset investment approach, which was a part of the Plan's design and is not a fiduciary decision.

Klawonn shall file her Second Amended Complaint ("SAC") within 21 days after the date of this Order. Failure to file a timely SAC will result in dismissal of this action, with prejudice. The Board shall respond within 21 days after Klawonn files and serves the SAC.

**IT IS SO ORDERED.**