UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-9194-DMG (JEMx) | Date | September 27, 2022 |
|---|---|---|---|

| Title | *Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 1 of 9 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   [IN CHAMBERS] ORDER DENYING DEFENDANT'S MOTION TO DISMISS [63]**

Plaintiff Patricia Klawonn, a participant in the Motion Picture Industry ("MPI") Individual Account Plan (the "Plan"), brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"),[1] asserting one claim, for imprudent monitoring of the Plan by the Board of Directors for the Motion Picture Industry Pension Plans and John and Jane Does 1–20.[2]   Specifically, Plaintiff asserts that Defendants chose to invest Plan assets into a single, pooled investment option primarily relying on high-cost, poorly performing actively managed funds and then imprudently monitored the Plan while this investment choice underperformed.

The Court previously dismissed the First Amended Complaint with leave to amend, and the matter is now before the Court on Plaintiff's Second Amended Complaint ("SAC" [Doc. # 56]), Defendant's Motion to Dismiss the SAC ("MTD" [Doc. # 63]), and Defendant's related request for judicial notice and notices of supplemental authority.   [Doc. ## 64, 74, 77.] Defendant argues that Plaintiff fails to plausibly allege the existence of comparator plans and investments to support her claim of imprudent monitoring and to show that Defendants failed to monitor the Plan.   For the reasons set forth below, the Court finds that Plaintiff has adequately stated her claim and **DENIES** Defendant's MTD.

---

[1] 29 U.S.C. §§ 1001 *et seq.*

[2] John and Jane Does are allegedly members of the Board of Directors.   Second Amended Complaint ¶ 25 [Doc. # 56].   The Court refers to the Board of Directors as "Defendant" in this Order; references to "Defendants" encompass the Doe Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194-DMG (JEMx)** | Date | September 27, 2022 |
|---|---|---|---|

| Title | ***Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 2 of 9 |

# I.
# BACKGROUND

The SAC includes the following allegations relevant to the MTD and forming the basis of Plaintiff's claim.[3]  From the end of 2014 to the end of 2019, the Plan had between 79,000 and 92,000 participants and between $3.7 billion and $5.1 billion in assets.  SAC ¶ 20.  The Plan's goal is to achieve positive returns for participants over the long term and to diversify assets in order to reduce the risk of wide swings in market value.  SAC ¶ 75.  The Plan is a defined *contribution* plan (not a defined *benefit* plan,[4] which entitles participants to a fixed monthly pension payment) so that Plan participants' benefits are limited to the value of their investments, as determined by market performance less expenses.  SAC ¶ 4.  The participants thus bear the risk of high fees and poorly performing investments chosen by Defendants.  *Id.*

Defendants, including the Board (which is both the "plan sponsor" (*see* 29 U.S.C. § 1002(16)(B)) and a "named fiduciary" of the Plan under ERISA (*see* 29 U.S.C. § 1102(a))), chose to invest the Plan's assets into a single investment pool.  This means that Plan participants are not able to choose a particular investment option.  Instead, participants are automatically enrolled into the overarching investment pool, which, according to Plaintiff, makes Defendants' choice of investment all the more "critical to participants' investment results and, ultimately, their ability to retire with adequate assets."  *See* SAC ¶¶ 6, 22.  Plaintiff alleges that the composition of this pool reflects poor investment decisions and over-utilization of poorly performing, actively managed investments with excessive fees (such as hedge funds).  SAC ¶¶ 9, 22, 39, 40, 46.  Indeed, throughout the statutory period, over 90% of the Plan assets were allocated to "actively managed investment options that carried significant base investment management fees, with hefty performance fees on top of that in many cases."  SAC ¶ 53.

As support for her argument that the investment pool over-relied on investments with excessive fees, Plaintiff asserts that in 2017, the average plan with over $1 billion in assets had a total plan cost of 0.26% annually.  *See* SAC ¶ 54.  Yet, as of 2019, the Plan charged average fees of 1.18% annually (or, $60 million annually)—making it one of the five most expensive plans in

---

[3] The Court takes as true the well-pleaded allegations of the SAC in the Background section of this Order. The Court relies on only those allegations necessary to the analysis and does not otherwise restate Background previously set forth in the Court's Order on the first Motion to Dismiss, which is incorporated by reference.  [Doc. # 53.]  As Plaintiff acknowledges, the Court has dismissed her claim relating to failure to choose an appropriate investment option without leave to amend, and Plaintiff does not reassert that claim.  SAC at 19 n.11.

[4] The Plan is one of two retirement plans the Board manages on behalf of MPI members.  The Board also manages a defined benefit plan.  SAC ¶ 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194-DMG (JEMx)** | Date | September 27, 2022 |
|---|---|---|---|

| Title | ***Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 3 of 9 |
|---|---|---|---|

the country. SAC ¶¶ 10, 54 (discussing 951 defined contribution plans governed by ERISA and with more than $1 billion in assets at the end of 2019). Indeed, seven of the Plan's investment options charged fees averaging more than 2% annually. SAC ¶ 53.

Plaintiff further alleges that Defendants' chosen strategy for the single investment pool proved "wildly unsuccessful." SAC ¶ 7. She compares the Plan's three-, five-, and ten-year returns between 2013 and 2018 to other plans with assets over $100 million and over $1 billion, asserting that the Plan's returns were consistently near the very bottom of this group. SAC ¶¶ 55–56.

Plaintiff also includes allegations relating to comparator plans that used more prudent investments. For instance, she alleges the "Building Service Plan" (95,000 participants) similarly seeks to minimize risk and preserve long-term gains and in doing so, relies on a mutual fund for more than two-thirds of the Plan's assets. That mutual fund's expenses cost one-seventh of the Plan's expenses, while the fund achieved greater returns with lower volatility over a 20-year period. SAC ¶ 66–67. Including the Building Service Plan, Plaintiff identifies 12 defined contribution plans with more than 10,000 participants and $100 million in assets primarily invested in a single pool, with similar investment goals. *See* SAC ¶¶ 69–72. She asserts that over ten- and five-year intervals, these similar plans exhibited lower volatility and higher returns than the Plan. SAC ¶ 69. And she provides a chart of 20-year average returns of eight investment alternatives that have lower annual expenses and near or greater returns than the Plan. SAC ¶ 76.

Plaintiff also alleges that Defendants were aware of the underperformance of their chosen investment pool during the statutory period. SAC ¶¶ 9, 58. Defendants were aware that as of 2019, the Plan significantly trailed Defendants' chosen benchmarks for performance over three-, five-, and ten-year intervals. SAC ¶ 58. The 2019 annual report for the Plan reflected performance from the 87th to 93rd percentile over three-, five-, and ten-year periods compared to the Plan's cited peers. SAC ¶ 59. Yet, even when replacing equity managers, Defendants continue to rely primarily on active equity managers, and when reporting performance in 2019, they emphasized 20-year performance, rather than recent abysmal numbers. SAC ¶¶ 57, 60; *see also* SAC ¶ 61 (alleging that when ending the 20-year period in 2020, the Plan fell below its benchmarks). Plaintiff asserts that based on the high cost and poor track record of Defendants' strategy for investing the Plan, it is reasonable to infer that Defendants imprudently managed the Plan's investments, violating ERISA. SAC ¶ 80.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194-DMG (JEMx)** | | Date | September 27, 2022 |
|---|---|---|---|---|
| Title | *Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | | Page | 4 of 9 |

**II.**
**JUDICIAL NOTICE**

Defendant requests that the Court take judicial notice of a variety of documents in connection with its MTD, including the Plan's governance documents, performance reports from 2019 and 2020, and information about the alleged comparator plans. [*See* Doc. # 64.] Regardless of whether the Court took notice of most of these documents, the analysis herein would remain unchanged. The Court therefore denies the request, except as set forth below.

The Court grants the request to take judicial notice of the Plan's performance reports from 2019 and 2020, the Plan's 2019 Form 5500 documents, and a 2019 report for an alleged comparator plan. [*See* Doc. ## 63-5, 63-6, 63-8, 63-10.] These requests are unopposed. As discussed in greater detail below, however, the parties advance varying interpretations of these documents. The Court does not take judicial notice of these documents to the extent that Defendant argues the documents' contents support their characterization of the facts, not Plaintiff's. *See Khoja v. Orexigen Therapeutics, Inc*, 899 F.3d 988, 1003 (9th Cir. 2018).

**III.**
**DISCUSSION**

**A.    Legal Standard**

A defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678. Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-9194-DMG (JEMx) | Date | September 27, 2022 |
|---|---|---|---|

| Title | *Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 5 of 9 |
|---|---|---|---|

**B.      Analysis**

**1.      Comparator Plans and Investments**

As the Court previously explained when granting the prior MTD, the FAC failed to state a claim because it did not provide more details about "the Plan's comparators," specify "what 'significantly better performing underlying investments with lower fees'" the Board should have investigated, and allege "what other investment options were available and could satisfy the Plan['s] strategy." [Doc. # 53 at 11–12 (internal citation omitted).[5]]  Plaintiff now includes allegations about comparators in the SAC.

Defendant takes issue with Plaintiff's choice of comparator plans and investments in the SAC, asserting that Plaintiff's allegations about the comparators are inadequate to show that the comparators are sufficiently similar to be meaningful benchmarks.  MTD at 15.  The Court disagrees and concludes that Plaintiff's allegations are plausible and sufficiently specific to survive the motion to dismiss.

Defendant claims, for instance, that the "Building Service Plan" identified by Plaintiff is not a meaningful benchmark because there are multiple investment options for that plan and the option that Plaintiff highlights (a mutual fund) is the *default* choice—not the *only* choice for participants.  MTD at 16.  Another comparator, the "Bricklayers Savings Plan," has both an annuity retirement benefit that depends on a pooled asset investment arrangement and a participant-directed 401(k) benefit.  Defendant argues that the 401(k) component of that plan renders the plan dissimilar from the Plan here. *Id.*  These arguments are not persuasive.  Plaintiff alleges that the Building Service Plan's default investment holds "more than two-thirds" of the plan's assets and that the plan seeks to minimize volatility and ensure long-term gains—like the Plan here.  SAC ¶ 66.  That a mutual fund with less expenses, greater returns, and lower volatility over a 20-year period was the Building Service Plan's choice for a default investment holding most of its assets (if not all) supports Plaintiff's argument that Defendants should have chosen more prudent investment options, even if the Building Service Plan was structured differently from the Plan at issue in this action.  Similarly, the 2019 Bricklayers Savings Plan report on which Defendant relies indicates that the participant-directed 401(k) benefit holds only 2.25% of the Plan's total assets.  [*See* Doc. # 63-8 at 16.]

---

[5] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194-DMG (JEMx)** | | Date | September 27, 2022 |
|---|---|---|---|---|

| Title | ***Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 6 of 9 |
|---|---|---|---|

Defendant also argues that three of the comparator plans have at most 22,552 participants and none has more than $1.8 billion in assets. MTD at 18. Plaintiff alleges that the Plan had between 79,000 and 92,000 participants and between $3.7 billion and $5.1 billion in assets. SAC ¶ 20. But Defendant does not point to authority that persuades the Court that these comparators are so much smaller than the Plan that they are dissimilar as a matter of law—indeed, the largest comparator, the Building Service Plan, had 95,563 participants and $1.8 billion in assets, according to Defendant. By comparison, at its low range during the period at issue, the Plan had 79,000 participants and $3.7 billion in assets during the period at issue. *See* SAC ¶ 20.

Defendant also takes issue with Plaintiff's calculation of the Plan's investment fees, but the Court declines to revisit this argument, which it rejected in the prior Order denying the first MTD. [Doc. # 53 at 10 n.5.] The SAC incorporates documents stating that in 2019, administrative expenses were 0.15% of Plan assets, which leaves 1.03% as asset- and performance-based investment management fees. *See* SAC at 21 n.13 (citing "page 4 of the Notes to Financial Statements of the Plan's [Form] 5500" [Doc. # 63-10 at 41]). This is significantly more than the allegedly "on par" 0.30% and 0.22% investment management fees that Defendant cites, and Plaintiff's allegations on this point are, again, adequate to survive a motion to dismiss. *See* MTD at 19; *see also* SAC ¶ 76 (alleging annual expenses of comparators that do not exceed 0.74%). Defendant argues that a comparison with passively managed funds is inapposite; but the point of the comparison is that Defendants *should have* used lower cost, passively managed funds. And Defendant's cited authority that fee expense ratios from 1.24% to 2% are *per se* reasonable was reversed by the Ninth Circuit. *See Kong v. Trader Joe's Co.*, No. CV 20-05790 PA (JEMx), 2020 WL 7062395, at *4 (C.D. Cal. Nov. 30, 2020), *rev'd and remanded*, No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022).

Defendant argues that Plaintiff's comparisons of five- and ten-year performance and volatility rates misses the point, based on the Plan's long-term investment objectives. MTD at 19. But the SAC includes allegations that the Plan's 21-year performance was "abysmal" (including an argument that a 20-year average ending in 2019 is misleading) (*see* SAC ¶¶ 60–61) and that 20-year average returns of particular investment pools outperformed the Plan. *See* SAC ¶ 76; *accord In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2021 WL 5331448, at *8 (N.D. Cal. Nov. 16, 2021) (rejecting a bright-line rule that short-term underperformance cannot support a plausible claim of prudence and denying a motion to dismiss on similar grounds where the plaintiffs went beyond merely alleging short-term underperformance). And while Defendant takes issue with the "insubstantial" difference in return between the Plan and alleged peer plans over the short term (*see* SAC ¶ 70), Plaintiff's complaint highlights eight different investment options that, over a 20-year period, had average returns of up to 5.6% more than the Plan's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194-DMG (JEMx)** | Date | September 27, 2022 |
|---|---|---|---|

| Title | **_Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al._** | Page | 7 of 9 |
|---|---|---|---|

chosen investment pool. SAC ¶ 76. As noted above, Plaintiff also alleges that one of these funds (which outperformed the Plan's investment pool by 2.6% over 20 years, had significantly lower annual expenses, and was less volatile) was the primary chosen investment vehicle for the Building Service Plan, which allegedly was of comparable size and had comparable goals to the Plan. Similar to the Plan, according to Plaintiff, the comparison plans also seek out diversified investments, so that Plaintiff plausibly alleges the existence of other, diversified investment options for the Plan. *Cf. Forman v. TriHealth, Inc.*, 40 F. 4th 443, 450 (6th Cir. 2022) (affirming the dismissal of a claim relating to failure to provide cheaper investment alternatives where plaintiffs "did not plausibly plead that these available alternatives were otherwise equivalent to the selected funds"). Thus, Defendant's argument that the SAC should be dismissed because Plaintiff's strategy would "fl[y]in the face of" prudent diversification of funds does not render the SAC implausible. *See* SAC ¶ 74 ("The Plan could have achieved its conservative investment objectives using just a single, lower cost mutual fund. . . . Plaintiff has identified several mutual funds that were utilized by one or more defined contribution plans in a manner similar to the Plan's single pooled investment. . . . To meet the varying needs of such a large group of participants, these investment options maximize diversification in order to reduce overall risk.").

As Defendant points out, various courts have dismissed claims resting upon a comparison of passively- to actively-managed funds, reasoning that such a comparison relates "apples and oranges." *See, e.g.*, *Smith v. CommonSpirit Health*, No. CV 20-95-DLB-EBA, 2021 WL 4097052, at *6 (E.D. Ky. Sept. 8, 2021). Nevertheless, as the Northern District of California has repeatedly recognized, "passively managed funds might, in some situations, serve as meaningful benchmarks for actively managed funds." *See In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *7 (discussing cases). If a complaint contains plausible allegations explaining why the passively managed funds are appropriate comparators—as the SAC does here—the claim should not be dismissed. *See id.* at *7–*8.

In short, the Court rejects Defendant's arguments that the comparator plans and their investment choices are so dissimilar from the Plan that as a matter of law, the alleged comparators are inadequate. Plaintiff's detailed allegations about the comparator plans render her claims plausible. *Accord In re: Prime Healthcare ERISA Litig.*, No. SD CV 20-01529-JLS (JDEx), 2021 WL 3076649, at *6 (C.D. Cal. July 16, 2021) (concluding that arguments about whether another fund was an appropriate benchmark were not appropriately addressed on a motion to dismiss and depended on factual questions).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9194-DMG (JEMx)** | Date | September 27, 2022 |
|---|---|---|---|

| Title | ***Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.*** | Page | 8 of 9 |
|---|---|---|---|

### 2.    Failure to Monitor

Defendant also challenges whether Plaintiff has adequately alleged a failure to monitor. MTD at 12.

Defendant argues that performance reports show that Defendants were actively monitoring and managing the Plan.  Defendant claims, for instance, the 2019 performance report for the Plan [Doc. # 63-5 at 30] contradicts allegations that Defendant allocated more than 90% of the Plan assets to actively managed investment options with high fees.  *See* MTD at 24; SAC ¶ 53.  But Plaintiff asserts that the same performance report shows that "only 7.3% of the Plan's assets were invested in low-cost index funds . . . and more than half of the remaining 16.2% were invested with active managers whose *base fees* may have been 0.20% or less, but which also charged hefty performance fees."  Opposition to MTD ("Opp.") at 20 [Doc. # 65]; *see also* SAC ¶ 53 (discussing base and performance fees).  Defendant also asserts that it replaced equity managers with managers "of the ilk that Plaintiff claims she approves," but Plaintiff responds that the 2020 performance report reveals that 75% of the Plan's assets remained held in high fee investments.  *See* Opp. at 14–15.  And while Defendant argues that it added non-hedge fund investments in 2020, Plaintiff asserts that the 2020 performance report reveals that three hedge fund investments were added and that six funds have performance fees, including an "alarming 3.00% base fee plus a 30% performance fee on *all returns*" for one fund.  Opp. at 30.  Further, to the extent that Defendant and Plaintiff take contrary positions about the significance of various facts in the performance report, the Court will not take judicial notice of these facts to resolve the motion to dismiss.  *See Khoja*, 899 F.3d at 999.

The allegations of the SAC, viewed as a whole, adequately paint a picture of a failure to monitor in light of known underperformance.  *Accord Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *6 (N.D. Cal. Jan. 21, 2021) ("'[A] claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.'" (quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 718 (2d Cir. 2013)).  Plaintiff's claims go beyond merely alleging underperformance, asserting that meaningful benchmarks existed and were ignored by Defendants, even though Defendants were aware of the Plan's failings.  *Cf. Mattson v. Milliman, Inc.*, No. CV 22-37 TSZ, 2022 WL 2357052, at *1 (W.D. Wash. June 30, 2022) (finding that allegations of poor performance, standing alone, were inadequate); *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *8–*9 (N.D. Cal. Feb. 9, 2021) (finding that conclusory allegations that less expensive funds were meaningful benchmarks, based on only short-term comparisons, were inadequate).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-9194-DMG (JEMx) | Date | September 27, 2022 |
|---|---|---|---|

| Title | *Patricia Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans, et al.* | Page | 9 of 9 |
|---|---|---|---|

**IV.**
**CONCLUSION**

The motion to dismiss [Doc. # 63] is **DENIED.**  Defendant shall file its Answer by October 18, 2022.

**IT IS SO ORDERED**.